UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDWARD TUCCIO,                          :
                                        :
    Plaintiff,                          :
                                        :
V.                                      : CASE NO. 3:05-CV-1407(RNC)
                                        :
STEVEN D. PAPSTEIN,                     :
                                        :
    Defendant.                          :

<u>RULING AND ORDER</u>

    Plaintiff Edward Tuccio brings this suit under 42 U.S.C. § 1983 against Detective Steven D. Papstein of the Ridgefield Police Department seeking damages for false arrest. The action arises from plaintiff's arrest and prosecution in 2003 for making derogatory statements involving banks, criminal impersonation, and making false or misleading statements. Plaintiff claims that defendant submitted false information in the application underlying the arrest warrant. The defendant has moved for summary judgment relying on his own affidavit. Plaintiff has moved to strike portions of the affidavit. For the reasons that follow, plaintiff's motion to strike is denied and defendant's motion for summary judgment is granted.

I. <u>Motion to Strike</u>

    Plaintiff moves to strike numerous paragraphs in defendant's affidavit on the ground that they contain inadmissible hearsay. The paragraphs in question (5, 7, 9, 10, 12, 14, 18, 26, 27, 33, 34, and 35) describe information Detective Papstein learned

during his investigation.  The statements contained in the challenged paragraphs are not hearsay because defendant is not offering them for the truth of the matters asserted.  The statements are instead offered to show the information he had when he applied for the arrest warrant or his state of mind at the time of arrest.  See Golden v. City of New York, 418 F.Supp.2d 226, 233 (E.D.N.Y. 2006); see also United States v. Puzzo, 928 F.2d 1356, 1365 (2d Cir. 1991) (noting that evidence offered to show the effects of statements on a listener, or as proof of the defendant's state of mind, are not hearsay). In determining whether probable cause existed in the context of a false arrest claim, a court must consider the facts available to the officer at the time of the arrest.  Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).  The information defendant obtained during his investigation is therefore properly before the Court, and will be considered for its effect on his probable cause determination.  Plaintiff's motion to strike is therefore denied.

II. Motion for Summary Judgment

    A.    Facts

On May 17, 2002, Captain Michael Casey of the Ridgefield Police Department assigned Detective Papstein to investigate a series of phone calls to the Connecticut Department of Banking. Papstein interviewed Howard Pitkin, the Administrator of

Depository Institutions for the Department of Banking, who reported that the Department had received four telephone calls regarding the Ridgefield Bank, as well as Paul McNamara, the Bank's chairman.

Detective Papstein learned that the Department of Banking received the first call on February 14, 2002. The caller left a voice mail for Department of Banking employee Richard Lalor. The caller purported to be Rex Gustafson, and claimed that the Ridgefield Bank was embezzling millions of dollars. The caller also claimed that the Bank had manipulated millions of dollars under the name of Paul McNamara. The Banking Department had recorded and transcribed the telephone call.

Detective Papstein learned that the second call occurred on February 28, 2002. An unknown caller, identifying himself as Gary Smith at the Ridgefield Bank, left a voice mail message for Richard Lalor. The caller attempted to "report" Paul McNamara for "doing bad things" at the Bank involving six million dollars in revenues. The Department of Banking also recorded and transcribed this call.

The third call occurred on March 12, 2002, when a caller spoke directly with Richard Lalor. The caller, purporting to be Fred Orrico of Ridgefield, stated that Paul McNamara was stealing money from him and that Ridgefield Bank was involved.

3

The Department of Banking received the fourth call on April 1, 2002, in the voice mail of Richard Lalor. The caller identified himself as Carl Lecher of Ridgefield and stated that he was calling about a deal on "Treehouse Lane" in Ridgefield involving Ridgefield Bank and Paul McNamara. The Department of Banking recorded and transcribed the call.

Detective Papstein contacted Rex Gustafson, Gary Smith, Fred Orrico, and Carl Lecher about the phone calls each had allegedly made. Rex Gustafson provided a sworn statement declaring that he had listened to the tape of the telephone call, that it was not his voice on the recording, and that he did not make the call. Gary Smith provided a sworn statement making similar declarations. Fred Orrico and Carl Lecher also provided sworn statements to Detective Papstein affirming that they had not called the Department of Banking. Papstein himself listened to Lalor's recorded voice mails and determined that the voice sounded similar in all of the recorded calls.

On May 22, 2002, Detective Papstein interviewed Paul McNamara, with Captain Casey present. McNamara told Papstein that he had listened to the tape, and believed the voice to be that of a former client of his law firm, Edward J. Tuccio. McNamara had known Tuccio for more than thirty years. Plaintiff Edward J. Tuccio co-owns Tuccio Development, Inc., and at the time of the telephone calls, was engaged in a lawsuit against

Paul McNamara's law firm, Donnelly McNamara & Gustafson, and against Paul McNamara, Rex Gustafson, and Carl Lecher individually, regarding properties on "Tea House Lane."

Paul McNamara also told Detective Papstein that he had been contacted by Macklin Reid of the Ridgefield Press. McNamara said that Reid had told him a caller identifying himself as Paul McNamara had contacted the Ridgefield Press voicing displeasure over an article that had not been published, but that McNamara had not actually made such a call.

Detective Papstein interviewed Macklin Reid on May 25, 2002. Reid stated that Tuccio had contacted him in April, 2002, informing him of a possible story on the "Tea House Lane" lawsuit. Reid received a fax on April 23, 2002, purportedly from Tuccio, containing a copy of the lawsuit and providing a contact list that included Paul McNamara, Rex Gustafson, and Carl Lecher. Reid told Detective Papstein that he had received a call about a week after receiving the fax from Tuccio, purportedly from Paul McNamara, asking why the story had not been published. Reid had spoken with McNamara in the past and did not believe him to be the caller.

On May 23, 2002, Detective Papstein contacted Tuccio directly, recording the call on the Ridgefield Police Department's taped line. He asked Tuccio about the fax to the Ridgefield Press, which Tuccio admitted sending, and then

5

informed Tuccio of the complaint regarding the Department of Banking telephone calls. Tuccio asked Papstein whether the calls were taped, Papstein replied that they might have been, and Tuccio stated he was going to contact an attorney because he was not going to "indict" himself. Tuccio did not deny making the calls.

After listening to the Department of Banking recordings and speaking to Tuccio on the telephone, Papstein believed it was Tuccio's voice on the recorded calls. Rex Gustafson, who knows Tuccio personally, also listened to the tapes of the recorded calls and told Detective Papstein he believed the voice was Tuccio's. Carl Lecher, who has known Tuccio for more than thirty years, also told Papstein the voice sounded like Tuccio's.

After obtaining search warrants for the telephone records of Tuccio Development and Tuccio's personal cellular telephone, and finding no calls to the Department of Banking, Papstein learned that the Department of Banking had a public toll free number through which a caller could leave a voice mail message for Richard Lalor. Papstein asked Howard Pitkin to provide him with records of the telephone numbers that called the toll free line on the days the four calls were received. When Papstein obtained the records, he found that the Department of Banking had received calls on each of the days in question from the number 203-438-2670 in Ridgefield. That telephone number was the same one used

6

to call Richard Lalor on March 12, 2002 at 8:45 a.m., approximately the same time Lalor said he spoke directly to the caller.

Papstein contacted SBC/SNET regarding the number 203-438-2670. He learned that the number belonged to Tuccio Development, Inc., with an associated address of 43 Eleven Levels Road in Ridgefield. Papstein checked the Ridgefield Town tax records and found a tax bill listing Edward J. Tuccio as the owner of 43 Eleven Levels Road. Papstein also learned from the Ridgefield Post Office that Tuccio was receiving mail at 43 Eleven Levels Road.

Based on the results of his investigation, Papstein concluded that he had probable cause to arrest Tuccio and prepared an arrest warrant application. A Connecticut Superior Court Judge found probable cause and issued the warrant. Tuccio was arrested and charged with four counts of making derogatory statements involving banks,[1] four counts of criminal

---

[1] Connecticut's statute on Making Derogatory Statements Involving Banks provides:
> Any person who, wilfully and maliciously, makes, circulates or transmits to another any false statement, rumor or suggestion . . . which is, directly or by inference, derogatory to the financial condition or affects the solvency or financial standing of any bank . . . shall be fined . . . or imprisoned not more than one year or both.

Conn. Gen. Stat. § 36a-55.

impersonation,[2] and four counts of making false and misleading Statements.[3]

On September 26, 2003, more than eight months after the arrest warrant was signed, SBC/SNET sent Tuccio a letter indicating that telephone number 203-438-2670, belonging to Tuccio Development, was associated with the physical address of 70 Armand Road until September 19, 2002, when it was transferred to 43 Eleven Levels Road. The SBC/SNET letter was forwarded to the Ridgefield Police Department on October 22, 2003. Edward J. Tuccio's brother, Arthur Tuccio, Jr. – also a co-owner in Tuccio Development – resided at 70 Armand Road with his wife and children. Edward Tuccio did not conduct business at 70 Armand Road or reside at 70 Armand Road, but he did have access to the

---

[2] Connecticut's statute on Criminal Impersonation provides:
A person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another . . . .
Conn. Gen. Stat. § 53a-130(a).

[3] Connecticut's statutes on Making False and Misleading Statements provide:
No person shall make . . . orally or . . . in any proceeding, investigation or examination under [the Banking Law of Connecticut], any statement which is, at the time and in the light of the circumstances under which it is made, false or misleading in any material respect.
. . .
(a) Any person who violates any provision of the banking law . . . shall be fined . . . for each offense.
(b) Any person who wilfully and deliberately violates any provision of the banking law . . . shall be imprisoned not more than one year or fined . . . or both, for each offense.
Conn. Gen. Stat. §§ 36a-53a, 36a-57.

8

telephone service there.

At an unknown point during the Tuccio investigation and prosecution, Detective Papstein also gained access to a deposition transcript in which Tuccio denied making the telephone calls to the Department of Banking.

On November 6, 2003, a jury acquitted Edward J. Tuccio of all charges. In 2003, Tuccio also won civil cases against Paul McNamara for legal malpractice, and Carl Lecher for fraud and violation of the Connecticut Unfair Trade Practices Act.

    B.    <u>Summary Judgment</u>

Summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc</u>. 477 U.S. 242, 248 (1986). When ruling on a summary judgment motion, a court must view all evidence in the light most favorable to the party opposing summary judgment and draw all permissible inferences from the evidence in favor of the non-moving party. <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir. 1996). However, a non-movant must offer some "hard evidence" showing his version of events is not "wholly fanciful," and must provide more than mere conjecture or speculation.

9

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005); Quarles v. General Motors, 758 F.2d 839, 840 (2d Cir. 1985). A "mere scintilla" of evidence in support of the non-movant's position will be insufficient to defeat summary judgment; there must be evidence on which a jury could reasonably find for the party. Anderson, 477 U.S. at 252.

    C.    Discussion

Plaintiff claims that defendant included materially false statements, necessary to a finding of probable cause, in the arrest warrant application. Specifically, plaintiff alleges that the defendant falsely represented that the telephone from which the subject calls were made belonged to the plaintiff, placed undue emphasis on the plaintiff's refusal to submit to interrogation, and misrepresented Carl Lecher's identification of plaintiff and the number of phone calls actually made.

The Fourth Amendment gives individuals a right to be free from arrests made without probable cause. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). This right is violated when the officer submitting an arrest warrant application "knowingly and intentionally, or with reckless disregard for the truth," makes a false statement or omits material information from his affidavit, and such information is necessary to the probable cause determination. Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993). There can be no federal civil rights claim when probable

cause exists, and probable cause provides an arresting officer with an absolute defense to false arrest. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1990); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002).

Probable cause to arrest exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Weyant, 101 F.3d at 852. The probable cause determination depends on the facts available to the officer "at the time of the arrest and immediately before it." Lowth, 82 F.3d at 569. Courts must look to the totality of circumstances in determining whether probable cause existed, keeping in mind that probable cause is a fluid, situation-specific concept not readily reduced to a neat set of rules. Illinois v. Gates, 462 U.S. 213, 233 (1983); Caldarola, 298 F.3d at 162.

The issuance of a warrant by a neutral magistrate generally creates a presumption that the arresting officer's belief in probable cause was reasonable. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). A plaintiff arguing that a warrant was issued on less than probable cause faces a heavy burden, and must make a "substantial preliminary showing" that the arresting officer violated his Fourth Amendment rights. Id. at 870-871.

11

Applying these rules, I find as a matter of law that Detective Papstein had probable cause.[4] Two witnesses who knew plaintiff personally, one of whom had known him for more than thirty years, believed the voice on the recorded calls was that of the plaintiff. A third witness who had also known plaintiff for more than thirty years told Detective Papstein that the voice sounded like plaintiff's. When Papstein himself listened to the recorded calls and spoke with the plaintiff, he believed plaintiff's voice matched the voice on the recordings. Defendant obtained records showing that the Department of Banking received phone calls from the plaintiff's business number on each of the days in question and, in the one instance when the Department of Banking provided an approximate time of the call, plaintiff's business number registered as calling at almost exactly that time. Plaintiff's lawsuit against McNamara, Gustafson, and Lecher over the "Tea House Lane" properties linked him to the persons named in, and the subject matter of, several of the calls. Finally, when defendant confronted plaintiff about the calls, plaintiff stated that he did not want to "indict" himself and refused to speak further.

Plaintiff has not made a "substantial preliminary showing" of a Fourth Amendment violation that could negate the probable

---

[4] Because plaintiff can prove no Fourth Amendment violation, it is not necessary to reach the issue of qualified immunity.

cause finding. Crediting all evidence favoring the plaintiff, and giving him the benefit of all reasonable inferences, defendant still would have probable cause as a matter of law based on the multiple voice identifications – including defendant's personal identification of plaintiff's voice – and the telephone records linking plaintiff's business to the calls. See Olivera v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994) (holding that sufficiently reliable and corroborated information about criminal activity from a single complainant can establish probable cause); Rizzo v. Edison, 419 F.Supp.2d 338, 347 (W.D.N.Y. 2005) (witness's statement to police that she recognized defendant's voice significant in probable cause determination).

Plaintiff attempts to use his recollections of statements made at his criminal trial to cast doubt on information Detective Papstein provided in the arrest warrant application. He claims that Carl Lecher could not identify him at his criminal trial and that defendant misrepresented evidence in claiming four calls were made since only three calls were discussed at the trial. Plaintiff has failed to make a "substantial preliminary showing" to support either of these contentions. He points only to self-serving hearsay descriptions from his own deposition that do not

actually support his claim.[5] Even assuming his contentions were supported by admissible evidence, they would be legally insufficient to refute probable cause. Pointing out inconsistencies between a probable cause affidavit and trial testimony without further evidence that an arresting officer misrepresented the information he was initially given does not defeat probable cause. Mapp v. Warden, 531 F.2d 1167, 1172-1173 (2d Cir. 1976). Probable cause determinations depend on the facts known to the officer at the time of arrest. Devenpeck v. Alford, 543 U.S. 146, 152-153 (2004); see also United States v. Tramunti, 513 F.2d 1087, 1104 (2d Cir. 1975).

Plaintiff claims that defendant falsely represented in the arrest warrant application that the telephone from which the subject calls were made was his when in fact it was located in his brother's personal residence. Plaintiff also contends that defendant failed to ask SBC/SNET where the telephone was located, or obtain records of the telephone's location, at the time the

---

[5] To support the contention that Carl Lecher failed to identify him at the criminal trial, plaintiff points to his own deposition stating, "In the trial . . . Carl Lecher, the Police Commissioner, never said that the voice was mine. He said, 'It sounds like Edward Tuccio.' He did not say that it was that of Edward Tuccio." Lecher's statement that "It sounds like Edward Tuccio," does not undercut probable cause. Similarly, plaintiff points to his own deposition to suggest that evidence of only three calls was presented at trial. The page he cites refers to plaintiff's testimony that only three calls were recorded – entirely consistent with Detective Papstein's affidavit – and that descriptions of the fourth (recorded) call did not identify Carl Lecher as the Police Commissioner.

calls were made.  However, plaintiff agrees that the telephone was registered to Tuccio Development Inc., the company he co-owned, and that he had access to the telephone when it was located in his brother's house.  Only material factual disputes can defeat a motion for summary judgment.  Quarles, 758 F.2d at 840.  Here, Papstein's affidavit, corrected in a manner most favorable to the plaintiff's claim, still supports a finding of probable cause.  Plaintiff had access to the telephone, and it was registered to his company.  Taking these facts along with the others in Papstein's affidavit, probable cause to arrest plaintiff would still remain.  Plaintiff's allegations are therefore not material and will not defeat summary judgment.

Finally, plaintiff argues that defendant's affidavit unduly relied on plaintiff's refusal to submit to interrogation once he realized he was the subject of a criminal investigation. Plaintiff contends that at the time he prepared the affidavit, defendant possessed a transcript of a deposition in which plaintiff expressly denied making the calls.  Plaintiff has presented no evidence that defendant actually received the transcript before he prepared the affidavit.  However, assuming the transcript was actually available to Papstein as he prepared the affidavit, he had no duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128

15

(2d Cir. 1997). Further, probable cause existed for plaintiff's arrest even "correcting" for the omitted information, based on the totality of the other facts defendant presented in his affidavit.

III. Conclusion

For the foregoing reasons, plaintiff's motion to strike is denied and defendants' motion for summary judgment is granted. The Clerk may close the file.

So ordered this 29th day of September 2007.

/s/<br>
Robert N. Chatigny<br>
United States District Judge